[Civ. No. 982.   Third Appellate District.—July 22, 1912.]

## CALIFORNIA TELEPHONE AND LIGHT COMPANY, Petitioner, v. F. C. JORDAN, Secretary of State, etc., Respondent.

CORPORATIONS—AMENDED ARTICLES—CERTIFIED COPY—ACKNOWLEDGMENT OF ORIGINAL ARTICLES NOT INCLUDED—MANDAMUS.—A refusal by the Secretary of State to file a certified copy of amended articles of incorporation filed in the clerk's office of the county in which the original articles were filed, as provided by law, on the ground that the certificate did not include the acknowledgment of the original articles, a certified copy of which had been originally filed with the Secretary of State, is not justifiable, and *mandamus* will lie to compel him to file the same.

ID.—EFFECT OF SPECIFIC ENUMERATION OF CONTENTS OF ARTICLES—EXCLUSION OF OTHER MATTERS.—The specific enumeration of the contents of articles of incorporation made in sections 290 and 291 of the Civil Code necessarily implies the exclusion, *ex industria,* of any other matters from the articles than those therein specifically named.

ID.—CERTIFICATES OF ACKNOWLEDGMENT NO PART OF CONTENTS OF ARTICLES—PURPOSE—PROOF OF GENUINENESS.—Under the provisions of sections 290 or 291 of the Civil Code, the certificates of acknowledgment of the articles of incorporation are no part of the articles themselves; but the acknowledgments are separately provided for in section 292 of the Civil Code, the purpose of the requirement of which is to show that the signatures to the articles are genuine, and made by *bona fide,* and not fictitious, persons.

ID.—CONSTRUCTION OF CODE AS TO AMENDED ARTICLES.—Section 362 of the Civil Code, under the terms of which original articles of incorporation may be amended, merely provides that "such original and amended articles of incorporation shall together contain all of the matters and things required by the law under which the original articles were executed and filed." It does not require that the certificates of acknowledgment of the original articles shall be attached to the articles as amended, but provides that "a copy of the said articles of incorporation, as thus amended, duly certified to. be

correct by the president and secretary of the board of directors or trustees of such corporation, shall be filed in the office where the original articles of incorporation are filed; and a certified copy thereof, duly certified by such county clerk, in the office of the Secretary of State."

ID.—MERE ANNEXING OF AMENDED ARTICLES TO ORIGINAL ARTICLES IMMATERIAL.—The mere annexing by the president and secretary of the corporation to the amended articles of such corporation of the original certificate of incorporation on file in the clerk's office, a certified copy of which had been filed with the Secretary of State, could add no force to the articles as amended, and could add nothing to the force or effect of the original articles of incorporation.

ID.—CAPITAL STOCK—DESIGNATION OF SHARES AS COMMON OR PREFERRED—CHANGE IN NUMBER OF SHARES NOT AFFECTED.—Where the amended articles of incorporation do not change or affect the number of the original shares of the capital stock of the corporation named in its original articles, the mere change in the amended articles of the designation of a certain portion of such shares as preferred, and of the residue thereof as common, stock, cannot be held in any sense to be tantamount to increasing or diminishing the capital stock, in violation of sections 359 and 362 of the Civil Code.

ID.—UNJUSTIFIABLE REFUSAL OF SECRETARY OF STATE TO FILE AMENDED ARTICLES FOR ILLEGAL CHANGE IN CAPITAL STOCK—MANDAMUS.— Where the Secretary of State refused to file a certified copy of the amended articles of incorporation, for the additional reason that the change in the designation of certain stock as preferred amounts to an increase of such stock and a diminution of the common stock in violation of law, such ground of refusal is unjustifiable, and *mandamus* will lie to compel the Secretary of State to file the amended articles, notwithstanding such objection.

ID.—DISTINCTION BETWEEN INCREASE AND DIMINUTION OF SHARES AND CLASSIFICATION—PUBLIC INTERESTS—CONTRACT BETWEEN SHAREHOLDERS.—While any change effected in the number of shares, if not legally performed according to the code provisions, might illegally affect the interests of the public and of the creditors of the corporation, by withdrawing its property therefrom, yet the act of classifying or dividing the capital stock into two or more kinds, without change in the number of shares, though required to be done in the amended articles, according to the statute, involves nothing more than a mere contract between the stockholders as to how they shall divide the profits and the corporate property after the payment of the corporate obligations.

ID.—CONSTRUCTION OF CODE PROVISION—ASSENT OF TWO-THIRDS OF STOCKHOLDERS TO INCREASE OR REDUCTION OF KINDS OF STOCK.—The provision in section 359 of the Civil Code, that "where the articles of

incorporation provide for two or more kinds of capital stock, no increase or reduction shall be made without the assent of two-thirds of all of the capital stock, and in making such reduction, the assent shall identify the particular class or classes of stock to be increased or reduced, and the amount apportioned to each," necessarily presupposes the existence of two or more classes of stock, at the time when the increase or reduction is made; and such provision has no application where the stock under the original articles of incorporation was all of one kind, and in amended articles, which must be approved by two-thirds of all the stockholders, it is merely divided into two classes or kinds of stock, without other change.

APPLICATION for writ of mandate to the Secretary of State.

The facts are stated in the opinion of the court.

Wm. B. Bosley, for Petitioner.

U. S. Webb, Attorney General, and J. Charles Jones, Assistant Attorney General, for Respondent.

HART, J.—This is an original application for a writ of mandate to compel the respondent, as Secretary of State of the state of California, to file, *nunc pro tunc,* as of date of March 21, 1912, in his said office of Secretary of State, a certified copy of the amended articles of incorporation of the petitioner.

The petitioner, whose principal place of business is in the city of Santa Rosa, county of Sonoma, was duly formed as a corporation on the eighth day of November, 1911, and its original articles of incorporation, duly executed and such execution duly acknowledged, were on the twenty-second day of November, 1911, filed in the office of the county clerk of the said county of Sonoma, and a copy thereof, properly certified by said county clerk, was filed with and in the office of the Secretary of State, as required by law.

Before the filing of said original articles, the petitioner complied with all the essential requirements prescribed by law for the formation of corporations and which entitled such articles and a copy thereof to be filed in the offices of the county clerk and the Secretary of State, respectively.

"On the nineteenth day of March, 1912," the petition proceeds to set forth, "said corporation amended its original

articles of incorporation by a majority vote of its board of directors and by the written assent of its stockholders owning, holding of record and representing more than two-thirds of its subscribed capital stock. Thereupon a copy of said corporation's articles of incorporation amended as aforesaid, duly certified by the president and secretary of said corporation and of its board of directors to be correct, was filed in the office of the county clerk of said county of Sonoma. The certificate of said president and secretary attached to said copy of said articles as amended was duly acknowledged by said president and secretary before a notary public of the state of California, in and for said county of Sonoma, who made, signed and sealed a certificate of acknowledgment to the certificate made as aforesaid by said president and secretary.''

On the twenty-first day of March, 1912, a certified copy of said copy of said amended articles, with a copy of said certificate of the president and secretary attached thereto, duly certified by the county clerk of the county of Sonoma, was presented by the petitioner to the respondent, as Secretary of State, for filing in his office. The respondent then refused, and still refuses, to file said certified copy of a copy of the amended articles in his office on the ground that there is not attached or annexed thereto a copy of the certificates of acknowledgment which were attached to the original articles of incorporation, claiming that, as a prerequisite to the right of the petitioner to have the copy of the amended articles filed in the office of Secretary of State, it is essential, under the law, that such copy should have attached thereto a copy of the certificates of acknowledgment referred to.

The attorney general, representing the respondent, has interposed and filed a general demurrer and an answer to the petition, and by argument not only undertakes to support the ground, as above indicated, upon which the respondent refuses to file the amended articles in his office, but makes the additional point that the respondent's position is further sustained by the fact that said amended articles, in violation of the statute relating to that subject, has attempted to increase its capital stock.

We are unable to agree to either of the propositions advanced by the attorney general.

1. Under the heading, "Articles of Incorporation—What They shall Contain," section 290 of the Civil Code specifically enumerates, in various distinct subdivisions, the matters or facts which such instrument must contain, or, in other words, the matters which must be embodied in the original articles of incorporation in order to legally constitute them such an instrument.   That section and section 291 of the same code (the latter having exclusive application to certain classes of corporations) are the only provisions of our law to which our attention has been directed which pretend to set forth what matters or facts shall be contained in articles of incorporation, and in the absence of any other provision of law requiring other matters and things than those enumerated in said sections to be set out in such articles, the specific enumeration by said sections of the various facts which the articles must contain necessarily implies the exclusion, *ex industria,* of any other matters than those thus specifically named.

Now, then, nowhere in either of said sections are certificates of acknowledgment of the execution of articles of incorporation referred to by name or by any language furnishing ground for even the remotest inference that such certificates are any part of articles of incorporation, or that the legislature intended that they should become or be made a part thereof.   Unless, therefore, there is to be found elsewhere in the code some provision by which such certificates are declared either expressly or by reasonable construction to be an essential part of the articles of incorporation themselves, we must hold that the argument advanced in support of the proposition cannot prevail.   We have not succeeded in finding in any of the sections of the code relating to corporations and their formation any language indicating that the legislature intended to include such certificates as a part of the articles themselves any more than the acknowledgment of a deed—a prerequisite to the right to record it—is made by the statute a part of the deed proper.

The requirement that articles of incorporation shall be subscribed and acknowledged by certain persons is contained in section 292 of the Civil Code.   It is therein provided that "the articles of incorporation must be subscribed by three or more persons, a majority of whom must be residents of this state, and acknowledged by each before some officer authorized to

take and certify acknowledgments or conveyances of real property.'' The meaning of the language of that section and the purpose of the section is merely this: That when the articles of incorporation themselves have been prepared in accordance with other requirements of the code, the requisite number of the parties intending to form or associate themselves together as a corporation must acknowledge the due execution of the articles and thus furnish proof that such articles have been properly executed. In other words, the primary purpose of the certificates is to secure ''the state and all concerned against the possibility of any fictitious names being subscribed to the articles, and to furnish proof of the genuineness of the signatures.'' (*People* v. *Golden Gate Lodge No. 6,* 128 Cal. 257, 263, [60 Pac. 865, 867].)

But the attorney general insists that, according to the true construction of section 362 of the Civil Code, under the terms of which original articles of incorporation may be amended, it is essential that, where such articles are amended, the amendment must not only contain all the matters and things required by the statute to be embodied in original articles, but must further have annexed or attached thereto the certificates of acknowledgment of the execution of the original. But we are unable to extract any such meaning from that section. It is very true that the amendment, in addition to the alteration or change thereby intended to be effected, must contain all the facts which are required to be embodied in the original articles in order to constitute them legal articles of incorporation. This is not only clearly indicated by the language by which the amendment is referred to throughout the section, viz., ''the articles *as* amended,'' or ''the articles *so* amended,'' or ''the articles *as thus* amended,'' but it is so required by this specific language: ''Such original and amended articles of incorporation shall together contain all the *matters and things* required by the laws under which the original articles were executed and filed.'' In other words, the requirement is that the articles as amended must contain all the facts which sections 290 and 291, in case the corporation is of the class to which the last-named section applies, provide shall be set forth in articles of incorporation. But when this is done (and it has been done in this case), nothing further is required to entitle the amended articles to be filed except that they shall be

certified to be correct by the president and secretary of the corporation.   Nowhere does section 362 declare that the certificates of acknowledgment of the execution of the original articles shall be attached or annexed to the articles as amended. It reads as follows: "Any corporation may amend its articles of incorporation by a majority vote of its board of directors, and by a vote or written assent of the stockholders representing at least two-thirds of the subscribed capital stock of such corporation, or the written assent of the majority of the members if there is no capital stock; and a copy of the said articles of incorporation, as thus amended, duly certified to be correct by the president and secretary of the board of directors or trustees of such corporation, shall be filed in the office where the original articles of incorporation are filed, and a certified copy thereof, duly certified by such county clerk, in the office of the Secretary of State. . . . "

There is no other provision of the law, which has been called to our attention, requiring anything further to be done in the matter of effecting an amendment of articles of incorporation than is required by the foregoing provision, except a few other matters provided by the same section which are not important in the ascertainment of the meaning of the section in the respect in which we are considering it.   And we can conceive of no sound reason for holding the section to have any other meaning, while there are reasons which sustain the construction of said section which appears to us to be correct.   As one of such reasons, it may be suggested that the law prescribes a certain *kind* of proof of the due and proper execution of original articles of incorporation.   Primarily, as we have seen, the purpose of such proof is to disclose that such articles have been subscribed by *bona fide* and not by fictitious persons and the genuineness of the signatures.   Without proof of the *kind* prescribed by the statute of the execution of the articles, the officers in whose offices the original articles and a copy thereof must be filed would have no authority or right to file the same in their respective offices, or, if they did so file them under such circumstances, there would still be no legally constituted corporate entity, for it is the settled rule in this state, as well as in many other jurisdictions, that where the statute requires articles of incorporation to be filed with some public officer before the proposed corporation is authorized to engage in the

business for which it has been created, the filing of such articles in the manner prescribed constitutes a condition precedent to the right of such corporation to perform corporate functions. (*Martin* v. *Deetz,* 102 Cal. 55, [41 Am. St. Rep. 151, 36 Pac. 368] ; *Clapp* v. *Hastings Prospecting Co.,* 40 Neb. 470, [42 Am. St. Rep. 677, 24 L. R. A. 259, 58 N. W. 956] ; Thompson on Corporations, 2d ed., sec. 200.)

Now, since it is legally essential to the filing of the original articles that the *kind* of evidence prescribed by the statute of the execution thereof shall be provided, such evidence must necessarily be preserved in the offices where the filings are required to be made, so that the public, vitally interested in all corporations, may know whether such corporation has a legal existence, has the right to exercise corporate functions, and hence prosecute its corporate purposes and may legally be bound as a corporate entity by its contracts. The mere annexing, therefore, by the president and secretary of the corporation, to the amended articles of such certificates, the original of which is already on file in the office of the clerk of the county where the corporation has its principal place of business and a duly certified copy thereof on file in the office of the Secretary of State, could add no force to the articles as amended either as proof of the legal existence of the corporation prior to and at the time of the making of the amendment or of the proper adoption and due execution of the amended articles themselves. Indeed, all that the annexing of the original certificates to the amended articles could amount to would be that the president and secretary in certifying to the correctness of such amended articles, as the statute specifically requires, had further certified that at some other time some other persons had acknowledged the due execution of the original articles, which would involve the mere certifying to a fact of which the public had already been furnished knowledge by the very character of proof prescribed by the statute.

But there is no necessity for further pursuing this discussion. A conclusive answer to the respondent's position upon this point is to be found, as before stated, in an absence°of any provision in the sections of the code by the authority of which articles of incorporation may be amended, or in any other section requiring certificates acknowledging the execution of original articles to be attached to amended articles.

2. There is, in our opinion, no merit in the second point urged by the attorney general.

It appears from the petition, as it does from the original articles of incorporation, a copy of which is made a part of this record, that the petitioner was formed and organized with a capital stock of $10,000,000, divided into one hundred thousand shares of the par value of $100 per share. It further likewise appears that, by the amendment to the original articles, the petitioner has divided said numbers of shares of stock into two classes, viz., preferred and common stock, forty thousand shares being thus made preferred stock and the remaining sixty thousand shares common stock. Prior to such classification the capital stock of the petitioner was not so divided or classified.

The petition alleges and, as a matter of fact, it is true, unless the position of the attorney general can be held as a legal proposition to be sound, that the petitioner has not, by its amended articles of incorporation, increased or diminished or attempted to increase or diminish its capital stock, etc. But upon this point the contention is that the classification of the stock in the manner pointed out in effect amounts to an increase of the preferred capital stock, and that in so increasing it, the petitioner did not proceed as in such cases provided by section 359 of the Civil Code.

Among other things, section 362 of the Civil Code, *supra,* declares that "nothing in this section shall be construed to authorize any corporation *to increase or diminish its capital stock,* change its name, extend its corporate existence, or increase or diminish the number of its directors, without complying with the special provisions of this code applicable thereto."

Section 359, *supra,* points out how and in what manner the capital stock of a corporation may be increased or diminished, and it is, of course, admitted that, in the act of classifying the capital stock of the petitioner, the procedure as thus required to be observed, was not followed. It is, however, very clear that the mere act of classifying capital stock, without changing the number of shares of such stock, cannot be held to be in any sense tantamount to increasing or reducing such stock. This proposition is too palpable to require discussion. Still, it may with no impropriety be noted that there is, in rea-

son, a marked line of difference between the act of increasing or reducing the capital stock of a corporation and that of simply dividing its capital stock into several classes or kinds, without an increase or reduction of the number of shares of such stock. Both acts can, it is very true, be accomplished only by a substantially strict compliance with the terms of the statute, but as to the first-mentioned act, it is plainly manifest that the public are directly and vitally concerned in its execution. Such act, if not legally performed, might result in impairing or disturbing, in some manner, the rights of the creditors of the corporation, as, for instance, by withdrawing its property from the demands of creditors. The act of classifying or dividing the capital stock into two or more kinds without any alteration or change in the number of shares of such stock, while required to be done as the statute ordains, involves nothing more than a contract between the stockholders as to how they shall divide the profits and the corporate property of the corporation, after the payment of corporate obligations. (Justice Lurton, in *Toledo etc. R. R. Co.* v. *Continental Trust Co.,* 95 Fed. 497, 531, [36 C. C. A. 155].) If the classification under such circumstances be illegal or not effected according to the statutory requirements, the result cannot affect the public but only the stockholders. From these considerations, as well as others which need not be referred to, it must become very clear that the mere act of dividing capital stock into two or more kinds, where there is no actual increase or reduction of such stock, cannot be held, upon any rational theory, to amount to or to have been intended by the legislature as the equivalent of the act of increasing or reducing the same.

But section 359 contains another provision upon which the attorney general, in attempting to support his position, lays special stress, and it reads: ''Provided, however, that where the articles of incorporation provide for two or more kinds of capital stock, no increase or reduction of capital stock shall be made without the assent of two-thirds of all the subscribed stock and in making such increase or reduction, *the assent shall identify the particular class or classes of stock to be increased or reduced and the amount apportioned to each.*''

The argument is that, the petitioner having had no preferred stock previously to the classification of its capital stock by the

19 Cal. App.—35

amendment in question, the act of thus classifying said stock was, within the meaning of the language of section 359 as above quoted, equivalent to the act of increasing the number of shares of preferred stock. Or, as the attorney general himself states his position: "The day before the increase it [petitioner] had no preferred stock. The day after it has forty thousand shares of preferred stock. The amount of the preferred stock is thus very much increased over what it was previously, being theretofore nothing in amount."

We do not think the argument thus advanced will stand under the test of a logical analysis of the provision upon which it is built up. That provision very plainly has application to those cases only where a corporation, whose capital stock is already divided into two or more classes, proposes to increase or diminish its capital stock, thus necessarily affecting, in point of quantity, one or perhaps all the several kinds of stock of which its capital stock consists, and not to those cases where, as here, the capital stock, being all of one class, is merely divided or classified into two or more kinds without actually increasing or reducing the original capital stock. No other meaning can be ascribed to that provision, it seems clear to us, without most seriously twisting its language out of all shape. The language, "and in making such *increase* or *reduction,* the assent shall *identify* the *particular class* or *classes* of stock to be *increased* or *reduced,* and the *amounts apportioned to each,*" necessarily presupposes the existence of two or more classes of stock at the time such increase or reduction of the capital stock is made. If, as here, there is but one kind of capital stock, then, obviously, there would be nothing to "identify" and nothing as to which an apportionment of "amounts" would be necessary. In other words, in a case like the present one, where the capital stock is all of one kind, and the same is merely divided into two or more classes or kinds, without increasing or diminishing the original number of shares of the capital stock, the act of so dividing such stock merely involves the *creation* of two or more kinds of stock out of the number of shares at which the corporation was originally capitalized. This proposition would appear to be self-evident. While it may be said to be true, in a case where, as here, all the stock was originally common stock, the division of such stock into two or more kinds will result in the

reduction of the number of shares of the common stock, yet, as declared, the provision relied upon by the attorney general could not have been intended to refer to any such case, for, as seen, by its own terms, it limits its operation to those cases only "where the articles of incorporation provide for *two or more kinds of capital stock*," hence the necessity, as shown, for the identification of the particular class or classes of stock "*to be increased or reduced.*"

We cannot see our way clear to hold otherwise than that the respondent has failed to present any valid reason for his refusal to file in his office the amended articles involved here. Corporations are creatures of the legislature, and the method of bringing them into existence must be found in the statutes and followed with substantial strictness to entitle corporations to perform corporate functions. And such statutes, if constitutionally valid, must be accepted as the legislature gives them to the people, and, therefore, the courts have no more power or right, by construction, to import into them language which has not been inserted therein by legislative authority than to take from them, by like process, language which the legislature has put into them. To hold with the attorney general upon either of the propositions to which he subscribes in this controversy would necessitate the insertion into the sections of the code pertinent to the issue submitted here language which they do not contain.

For the reasons herein set forth, a writ of mandate directed against the respondent as prayed for in the petition will issue out of this court. It is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 20, 1912.