[No. 30842. Department Two. July 1, 1949.]

C. F. LARSEN, *Appellant,* v. THE LILLY ESTATE, *a corporation, et al., Respondents.*[1]

[1]Reported in 208 P. (2d) 150.

*Jones & Bronson* and *Story Birdseye,* for appellant.

*Evans, McLaren, Lane, Powell & Beeks,* for respondents.

GRADY, J.—This action was brought by C. F. Larsen against The Lilly Estate, a corporation, and Charles H. Lilly, Jr. and Gordon Lilly, two of its stockholders, to determine the voting rights of the shares of stock owned by them. A demurrer to the amended complaint was sustained. The plaintiff declined to plead further, and the action was dismissed with prejudice. An appeal has been taken from the order dismissing the action. In this opinion, the plaintiff will be referred to as the appellant, The Lilly Estate as the corporation, and the individual defendants as the respondents.

The material facts as disclosed by the complaint and admitted by the demurrer are as follows: The widow and children of Charles H. Lilly, deceased, received from his

estate 2264 shares of the capital stock of The Chas. H. Lilly Co., a Delaware corporation. The respondents were minors. In April, 1931, The Lilly Estate, a domestic corporation, was formed for the sole and exclusive purpose of holding the stock left by the decedent. Article III of the articles of incorporation of the corporation reads as follows:

"CAPITAL STOCK

"The capital stock of the company shall be $226,400.00, divided into 2264 shares of the par value of $100.00 each. There shall be two classes of stock, common and preferred. The preferred stock shall consist of 517½ shares of the par value of $100.00 each, and the common stock of 1746½ shares of the par value of $100.00 each.

"The entire voting power shall rest with the common stock, the preferred stock having no voting power. The preferred stock shall be preferred to this extent: Out of each annual earnings of the company, if the same be sufficient, there shall be paid upon the preferred stock a dividend or interest of three per cent of its par value before any part of such annual earnings shall be paid upon the common stock. Out of the remainder of each annual earnings, if any, there shall be paid upon the common stock a like sum of three per cent of its par value, and the remainder of each annual earnings, if any, shall be paid upon the preferred and common stock ratably. In case of sale or dissolution, bankruptcy or insolvency, the assets of the company shall be first applied upon the preferred stock, until there shall have been paid thereon a sum equal to its par value; then the remaining assets, if any, shall be applied upon the common stock, until there has been paid upon it its par value, and if there shall remain any assets, after each class of stock shall have so received its par value, they shall be paid ratably upon the Preferred and Common stock.

"Should Charles H. Lilly, Jr. and/or Gordon Lilly, at the time they respectively arrive at the age of twenty-one years, own any of the preferred stock, the preferred stock which the one arriving at the age of twenty-one years may own at that time, may be surrendered to the company, and he shall be entitled to receive from the company in exchange therefor, a like number of shares of common stock, and for that purpose the surrendered preferred stock shall be reissued as common stock."

All of the preferred stock of the corporation was issued to respondents and each owned 258¾ shares. The common

stock, consisting of 1746½ shares, was owned by the other members of the Lilly family. The respondent Charles H. Lilly, Jr. became twenty-one years of age May 25, 1937, and Gordon Lilly reached that age on May 16, 1941. On or about March 1, 1943, the respondents surrendered their preferred stock to the corporation and received in lieu thereof an equal number of shares of the common stock of the corporation, and from that time on, they voted their stock at corporate meetings. On or about September 11, 1946, appellant acquired 1035 shares of the original common stock of the corporation from other members of the Lilly family. On August 28, 1947, the corporation, acting by and through its president and secretary, executed and acknowledged the following document:

"CERTIFICATE

"WILMOT H. LILLY and W. BYRON LANE, President and Secretary respectively of The Lilly Estate, a Washington corporation, do hereby certify that on March 1, 1943, Charles H. Lilly, Jr. and Gordon Lilly were each the owner of 258¾ shares of the preferred stock of The Lilly Estate, being all of the preferred stock issued by said corporation pursuant to Article III of the Articles of Incorporation of said Company, and that on said date said Charles H. Lilly, Jr. and Gordon Lilly surrendered their certificates of stock representing all of said preferred stock for exchange into common stock of The Lilly Estate, a corporation; that thereafter in July 1943 said certificates of stock representing said preferred stock were marked surrendered and cancelled and on September 2, 1943, common stock was issued and delivered to said Charles H. Lilly, Jr. and Gordon Lilly in like number of shares as surrendered by them for reissue into common stock, which was approved by all the then stockholders of The Lilly Estate.

"That the capitalization of The Lilly Estate, a corporation, remains the same, namely $226,400, divided into 2264 shares of common stock of the par value of $100 each.

"DATED this 28th day of August, 1947.

"THE LILLY ESTATE

"By WILMOT H. LILLY

"(Corporate Seal)　　　　　　President

W. BYRON LANE

Secretary."

The document was filed with the auditor of King county September 2, 1947. On September 11, 1947, the secretary of state issued a certificate reciting that the articles of incorporation of the corporation had been amended so as to provide for a capital of $226,400, divided into 2264 shares of common stock. The respondents attended the annual meeting of the stockholders of the corporation held September 2, 1947, in person or by proxy, and, over the protest of appellant, voted their stock. As a result the appellant was able to elect only two of the five directors chosen at the meeting. If respondents had not voted their stock appellant would have been able to have elected at least three directors.

The appellant in his brief and argument before the court presents four main contentions: (a) that the provision in the articles of incorporation providing for the conversion of preferred stock into common stock was void and of no effect; (b) that the common stock issued to respondents constituted an unlawful overissue, and therefore they did not have the right to use such stock for voting purposes, and the status of respondents remained that of preferred stockholders without voting rights; (c) that, in any event, the respondents, by delay in attempting to exercise any rights of conversion they may have had, lost them by reason of their delay; (d) the attempt on the part of the corporation to change its capital structure to provide additional common stock for issuance to respondents was ineffective because the necessary statutory procedure was not followed. We shall discuss the questions raised by appellant in the foregoing order.

(a) The contention made on this phase of the case is that the conversion privilege given by Article III of the articles of incorporation is invalid because it does not treat all preferred stockholders alike. All of the preferred stock was issued to the respondents, and the conversion privilege was made personal to and optional with each of them. The articles of incorporation of The Lilly Estate constituted a contract between the corporation and its original stockholders and between the stockholders themselves. *State ex rel.*

*Swanson v. Perham,* 30 Wn. (2d) 368, 191 P. (2d) 689. The contracts were ratified by the conduct of the minor respondents after they reached the age of majority. The contracts had a lawful objective and offended no rule of law or of public policy. The status of the preferred stockholders was in all respects equal and no situation has arisen to which the authorities cited by appellant might apply.

(b) In setting up the corporate structure of the corporation the capital stock was divided into 2264 shares of the par value of one hundred dollars each. The total number of shares was made up of 517½ shares of stock called "preferred stock" and 1746½ shares called "common stock." Both classes of stock had the same par value. The difference between the two classes of stock, aside from the name given to each, was that the entire voting power rested with the common stock and the preferences given to the preferred stock in the payment of annual earnings of the corporation and in the distribution of its assets in case of sale, dissolution, bankruptcy or insolvency. The respondents were given the privilege of surrendering their preferred stock upon arrival at the age of twenty-one years and of receiving in exchange therefor a like number of shares of common stock "and for that purpose the surrendered preferred stock shall be reissued as common stock."

We are unable to accept the view advanced by the appellant that, when the respondents exercised the privilege given them to convert their preferred stock into common stock, the act of the corporation in issuing common stock constituted an overissue of stock. An overissue of stock by a corporation occurs when such issue exceeds the amount of that authorized. There is no overissue when the corporate structure provides for a conversion of one class of stock into another at the option of a stockholder and such an exchange of stock is made without change in authorized capital. *Weidenfeld v. Northern Pac. R. Co.,* 129 Fed. 305; *California Tel. & Light Co. v. Jordan,* 19 Cal. App. 536, 126 Pac. 598; *Hood Rubber Co. v. Commonwealth,* 238 Mass. 369, 131 N. E. 201; *Sapperstein v. Wilson & Co.,* 21 Del. Ch. 139, 182 Atl. 18.

When the respondents surrendered their preferred stock to the corporation they immediately became entitled to stock which it had the power to reissue to them in the form of common stock. The respondents changed their status from preferred stockholders to common stockholders. The amount of the capital and the capital stock of the corporation were not increased. The respondents acquired the same amounts of stock and of the same par value as they had before. They acquired voting rights, but surrendered their preference as to dividends or interest and division of assets in the event of sale, dissolution, bankruptcy or insolvency of the corporation.

(c) Article III of the articles of incorporation made no provision as to when the respondents must exercise their privilege of conversion after arriving at the age of majority. Ordinarily when one is given a privilege to take some action and no time is fixed for its exercise he must do so within a reasonable time. In order that such question may receive judicial consideration it must appear that a party claiming to be affected by a delay was prejudiced thereby. Neither of the respondents made any election to convert their stock until a considerable time had elapsed after they each reached the age of majority. The holders of the common stock acquiesced in their deferment of the exercise of their privilege and the corporate affairs ran on the same as they had during their minority. By failing to make any objection to such deferment, and the privilege having been exercised by respondents, the other stockholders waived any rights they may have had and became estopped to deny the right of conversion.

When the appellant acquired stock from the common stockholders, he became charged with knowledge of the corporate structure and knew, actually or constructively, that the conversion of the stock of respondents had been made. It is a well-established rule of law that when a person acquires the capital stock of a corporation from one of its stockholders he acquires only the rights of such stockholder and is bound by any waiver or estoppel to which his vendor

has become subject. *Davis v. Harrison*, 25 Wn. (2d) 1, 167 P. (2d) 1015; *Babcock v. Farwell*, 245 Ill. 14, 91 N. E. 683, 137 Am. St. 284, 19 Ann. Cas. 74.

The appellant takes the position that the *Davis* case is not applicable because the action was a derivative one in which the plaintiff sought to recover, for the benefit of one of the corporations involved, the value of stock issued without consideration, while this action is brought by an individual stockholder in his own behalf. He asserts there is a difference between a case where a wrongful act has been committed against a corporation for which a subsequent stockholder seeks redress in a derivative action, and one where the wrongful act is a continuing one and affects a subsequent stockholder, and that in the former case the action can only be brought by one who was a stockholder at the time the wrongful act was committed, while in the latter case a subsequent stockholder may sue in his own behalf. If the situation here warranted the hypothesis assumed by appellant we could see merit to his conclusion, but the difficulty is that no wrongful or unlawful act was committed when the conversion of stock from preferred to common was made, and hence no right of action arose available to the stockholders from whom appellant acquired his stock. There was no right or cause of action surviving the sale and passage of title to such stock. There was no continuing wrong on the part of the corporation that a subsequent stockholder could sue to correct, or for which he might seek redress. We are therefore of the opinion that, even though the *Davis* case was derivative, the same rule of law applies to the facts of this case, and that when appellant acquired common stock from original stockholders, he acquired no greater rights than they had; that he was bound by the contract they had made with the corporation and also with the preferred stockholders with reference to the conversion of their preferred stock into common stock.

(d) The respondents contend that there was such a sufficient compliance with statutory procedure as to make the amendment to the articles of incorporation valid if the cer-

tificate above set forth is regarded as an amendment to the articles of incorporation authorizing the issuance of additional common stock. However, we prefer to rest our decision upon the ground that it was not necessary for the corporation to amend its articles of incorporation in order to carry out the plan prescribed by Article III thereof. It was not necessary to provide for the issuance of any stock in addition to that provided for in the articles of incorporation. When the respondents surrendered their preferred stock to the corporation they became entitled to have it reissued in the form of common stock, and the result was a conversion and a reissue of stock rather than any overissue of common stock.

The trial court properly sustained the demurrer to the complaint, and the judgment dismissing the action is affirmed.

JEFFERS, C. J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.