HERMAN SAPPERSTEIN, suing on behalf of himself and on behalf of all other stockholders of Wilson & Co. Inc., similarly situated, who shall come in and contribute to the costs and expenses of this suit,

*vs.*

WILSON & Co. INC., a corporation of the State of Delaware.

*New Castle, Dec. 4, 1935.*

*Herman Cohen,* of the firm of Cohen & Cohen, for complainant.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for defendant.

THE CHANCELLOR: In so far as this bill rests for support on the contention which was advanced and rejected in *Keller, et al., v. Wilson & Co., Inc., ante p.* 13, 180 *A.* 584, it cannot be maintained. That case was concerned with the identical state of facts with which the present one is concerned. The same point which was solely relied on there, is renewed here, and the answer thereto is the same.

But the complainant advances as an additional ground for relief in this case a theory which was not put forward in the *Keller Case.* It becomes necessary, therefore, to look further into the lawfulness of the amendment of its corporate charter which the defendant corporation undertook to adopt.

The complainant contends that the amendment is invalid because of its infraction of the provisions of *Section* 26 of the *General Corporation Law* (*Rev. Code* 1915, § 1940, as amended by 38 *Del. Laws, c.* 91, § 3). That section, in the particular which is pertinent to the contention, is as follows:

"Whenever issued shares having par value are changed into the same or a greater or less number of shares without par value, whether of the same or of a different class or classes of stock, the aggregate amount of the capital of the corporation represented by such shares without par value shall be the same as the aggregate amount of capital represented by the shares so changed; and whenever issued shares without par value are changed into other shares without par value to a greater or less number, whether of the same or of a different class or classes, the amount of capital represented

by the new shares in the aggregate shall be the same as the aggregate amount of capital represented by the shares so changed. The certificate of amendment of any Certificate of Incorporation effecting any change in the issued shares of the corporation shall set forth that the capital of the corporation will not be reduced under or by reason of said amendment."

Before testing the amendment by the power conferred by this paragraph of the law a brief statement of facts should be made by way of premise.

Before the amendment the issued shares of the defendant and the capital represented thereby were as follows:

227,248 shares of 7% preferred stock
(\$100.00 par)        \$22,748,000.00
313,236 shares of Class A stock
(no par)        15,661,800.00
434,983 shares of common stock
(no par)        2,739,055.00

As the treatment accorded the 7% preferred stock under the amendment is not involved in the pending suit, no further mention need be made of it. It is with the old Class A stock and its transmutation into common stock by the amendment with which the bill is concerned. By the alteration, Class A stock receives common stock in the ratio of five shares of common for one of Class A. For the 313,236 shares of Class A stock outstanding, therefore, 1,566,180 shares of common are substituted. The 434,983 shares of common stock outstanding before the amendment remain as before.

Before the amendment the number of shares of common authorized to be issued was 1,500,000. The amendment provides that the authorized number of common shares should be 2,500,000.

After the amendment, the capital represented by the common stock of 2,001,163 shares is stated to be \$18,400,-855.00. As the point of the present case hinges upon the question of capital "represented by the new shares," quoting the phrase of the statute, the following comparative state-

ment is helpful in understanding the contention advanced by the complainant. The statement expresses the view of the solicitor for the complainant. As later indicated, the court disagrees with the statement as a correct portrayal of the situation. The statement is as follows:

Stock Outstanding and Capital Represented Thereby.

### Before Amendment.

| Shares. | Capital Represented. |
|---|---|
| 313,236 Class A | $15,661,800.00 |
| 434,983 Common | 2,739,055.00 |
| | $18,400,855.00 |

### After Amendment.

| Shares. | Capital Represented. |
|---|---|
| 1,566,180 Common (in lieu of old Class A) | $14,401,160.00 |
| 434,983 Common (same as old common) | 3,949,695.00 |
| 2,001,163 | $18,400,855.00 |

The column headed "after amendment" is a break-down for comparative purposes of the 2,001,163 shares of present common and the capital represented thereby, so as to show what proportion of the capital now "represents," as the complainant contends, the common shares into which the old Class A has been changed by the amendment. Of course it is hardly to be imagined that the corporation's books would present the capital account in this break-down fashion. All that the books would show would be what the language of the amendment specifies, viz., that the common shares of 2,001,163 represent $18,400,855.00 of capital. When a single class of stock is represented by a given amount of capital in the aggregate, no purpose other than a historical one can be served by a showing that so much of the capital represents so many of the shares and so much the balance. The break-down, *supra*, which makes this show-

ing is derived by a calculation which the complainant has made, and expresses the predicate of fact-showing upon which his argument is based.

It thus appears that the capital now represented by the new shares into which Class A has been changed (represented in the sense shown above) is less by $1,260,640.00 than was the capital represented by the old Class A stock; and the capital now represented by the 434,983 shares of common is now $1,260,640.00 more than it formerly was. About four dollars per each share of the old Class A stock has been taken from the capital which, before the amendment, represented that stock and added to the capital which, before the amendment, represented the common stock. That is the way in which the operation works out as a result of the complainant's calculation.

Now, it is contended, such a result is illegal in that it violates the express mandate of *Section* 26 of the act (quoted *supra*) wherein it is provided that when outstanding shares are changed into other shares, "the amount of capital represented by the new shares in the aggregate shall be the same as the aggregate amount of capital represented by the shares so changed." As the aggregate capital which represented the old shares is more than the aggregate capital represented by the new shares into which the old have been changed (if the above portrayal is accurate), the literal requirement of the statute, it is insisted, has been violated and the amendment must therefore be treated as void.

It is a general rule of law, in the absence of statutory provision to the contrary, that the capital of a corporation shall not be impaired by the paying out of dividends to stockholders. That this rule is in the interest of creditors is plainly evident. That it is likewise in the interest of stockholders would seem to be true, though not quite so plainly evident. See the discussion found in *Wittenberg v. Federal Mining & Smelting Co.*, 15 Del. Ch. 147, 133 A. 48.

How stands the amendment in the light of creditors' interests? From the viewpoint of those interests, the change

which has been effected is of no moment whatever, because the aggregate amount of the capital of the corporation which is set up against stock liability remains exactly as it was. The right of creditors to insist that capital as distinguished from assets generally shall not be impaired, is in no wise infringed by the action of the corporation in allocating the amount of its capital account as representing this or that class of stock, so long as the aggregate of the capital account is undiminished.

Nor can I see how the interests of old Class A stockholders are in any, even the slightest, sense adversely affected by the fact that the proportion of capital now underlying the common shares which have been substituted for their old stock is less in amount than was the capital that formerly represented that stock. Of course the destruction of the preferences and special rights of the old Class A stock which the amendment caused, did affect it in a substantial way. But that adverse result is not here involved. We are presently concerned only with the matter of stock and its capital representation.

When once the Class A stock was transferred into common and made to stand on the same footing as other common shares already outstanding, it became a matter of indifference to the holders of such common stock, no matter whence the source of its derivation, as to how much capital represents each share. When we speak of an amount of capital as representing a given stock, we do not mean thereby to indicate that by reason of the representation that particular stock has a right to regard that amount of capital as segregated and specifically belonging to it. The claim of a particular stock to be satisfied out of capital in rivalry to the claim of another stock, is determined, not by the amount of capital representing the stock, but by the terms of the charter which define the rights and preferences of the various classes; and this claim can arise only when capital is distributed. So also priority rights to dividends are not

dependent on capital representations as applied to classes of stock.

What the complainant has done is to ascertain the amount of capital underlying each share of common, multiplied the total number of common shares received by the old Class A stock by that figure (approximately nine dollars and nineteen cents plus), which results in $14,401,160.00, and then tagged that as the amount of capital which represents the shares into which the old ones were changed. If this were a legitimate mode of treating the matter, it would, as I have already attempted to show, work no adverse result whatever upon the old Class A stockholders in their new status of common stockholders. Their interests, as before stated, had been adversely affected by their agreeing by the necessary vote to convert their old Class A stock into common stock.

The purpose of *Section* 26 in that portion of its provisions where it is required that the capital representing the new shares shall not be less than that representing the old ones, is to insure that when stock is re-classified it shall not be done in such a manner as to result in a reduction of capital. *State ex rel. Radio Corporation v. Benson,* 2 *W. W. Harr.* (32 *Del.*) 576, 128 *A.* 107. The last sentence of the quotation from the statute *supra* emphasizes this view. The amendment does not violate the section by working a reduction of the capital; nor does it, taking the view which the complainant does of its effect in the matter of capital representation of issued shares as shown in the above comparative statement, cause any injury to the complainant because of the alleged diminution of the capital representing the new stock.

But I am of the opinion that the complainant is not justified in the view that the capital which represented the old shares is less than the capital which represents the new ones. What his solicitor has shown by his calculation which is reflected in the foregoing comparative statement, is, not the capital "represented" by the shares of common stock

standing in place of the old Class A, but rather the capital values underlying the shares. There is a difference between these two concepts. The difference is illustrated by the simple case of a corporation having an authorized issue, we will say, of only one hundred shares of no par common stock. Suppose it should issue fifty of those shares at a stated consideration of ten dollars per share, and later should issue the remaining fifty at a stated consideration of fifteen dollars per share. In that case we would have five hundred dollars of capital representing fifty shares and seven hundred and fifty dollars representing fifty shares. Yet simple arithmetic would show that the last fifty shares has a capital value of only six hundred and fifty dollars underlying them. It would certainly not be permissible to say in that illustrative case that the capital representing the last fifty shares was six hundred and fifty dollars instead of seven hundred and fifty dollars.

It is no more permissible in this case to say that the common shares into which old Class A has been changed now has $14,401,160.00 of capital representing it as against $15,661,800.00 which represented the old Class A. The language of the amendment gives no countenance to the suggestion, for it provides that the capital theretofore representing the Class A stock shall "be and become a part of the aggregate amount of capital represented" by the old Class A and the then existing common. This language is entirely consistent with the following comparative statement:

Stock Outstanding and Capital Represented Thereby.
Before Amendment.

| Shares. | Capital Represented. |
|---|---|
| 313,236 Class A | $15,661,800.00 |
| 434,983 Common | 2,739,055.00 |
| | $18,400,855.00 |

After Amendment.

| Shares. | Capital Represented. |
|---|---|
| 1,566,180 Common (in lieu of Class A) | $15,661,800.00 |
| 434,983 Common (same as old common) | 2,739,055.00 |
| | $18,400,855.00 |

This is the correct manner in which the situation should be displayed. When it is so shown, we have but an instance of what is rather common, viz., a case where more capital is paid in for some shares of a no par issue of stock than has been paid in for others, and therefore where more capital represents some shares than represents others.

The demurrer will be sustained.