**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 2, 2025

Mary F. Dugan, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Kevin J. Mangan, Esquire
Womble Bond Dickinson (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801

RE: *HREF Senior Worthington LLC, et al. v. Conroe WM LLC, et al.,*
Civil Action No. 2024-1148-MTZ

Dear Counsel:

Since the August 20 expedited trial in this matter, my team has been working hard to resolve the plaintiff's claim under 6 *Del. C.* § 18-110. To be candid, we were very close to issuing an opinion. Then we became concerned about lack of notice to a party with a potential claim to the disputed office. The company at the center of the Section 18-110 claim was never served with the complaint, and no other form of notice was distributed.

As you know, this matter began with a November 8, 2024, complaint against defendants Conroe WM LLC ("OpCo") and WM Property Holdings LLC ("WMPH," and with OpCo, the "Defendants").[1] OpCo's holding company, WM Conroe Property Holdings LLC ("HoldCo"), was not a party to that suit. The

---

[1] Docket item ("D.I.") 1.

plaintiffs filed an amended complaint on November 26, 2024.[2]  The amended complaint added HoldCo as a nominal defendant, and added Count V seeking a declaration under 6 *Del. C.* § 18-110(a) that plaintiff HREF Senior Worthington LLC ("HREF"), a HoldCo member, is HoldCo's sole manager.[3]

HREF's Section 18-110 claim marched forward without notice to MStar Conroe, LLC ("MStar"), a purported HoldCo member that Defendants argue was, and is, a HoldCo co-manager.[4]  No summons was ever sought for or issued to HoldCo, the complaint was not sent to HoldCo's registered agent,[5] and no other form of notice was distributed in a way that would reach MStar.[6]  Plaintiff confessed it only gave notice of Count V to defendant WMPH, a HoldCo member

---

[2] D.I. 18 [hereinafter "AC"].

[3] AC ¶¶ 150–57.  Section 18-110 requires that HoldCo be "named as a party." 6 *Del. C.* § 18-110(a) ("In any such application, the limited liability company *shall* be named as a party . . . .") (emphasis added).  The amended complaint satisfied that statutory requirement. The amended complaint omitted HoldCo as a nominal defendant from the confidential cover page of the amended complaint, but the caption on page two properly lists HoldCo as a nominal defendant.  AC at 2.

[4] *See, e.g.*, D.I. 74 at 3–4.  HoldCo's final potential member, SL1 B LLC, had notice:  it is a plaintiff to the broader plenary action, is represented by the same counsel as HREF, and was served with the amended complaint.  Trans. ID # 75092906.

[5] *See* 6 *Del. C.* § 18-110 ("[S]ervice of copies of the application upon the registered agent of the limited liability company shall be deemed to be service upon the limited liability company and upon the person or persons whose right to serve as a manager is contested and upon the person or persons, if any, claiming to be a manager or claiming the right to be a manager.").

and disputed manager, through *File &ServeXpress* in this action.[7] Count V proceeded to trial.[8]

A Section 18-110 proceeding is *in rem*, not *in personam*, so the matter can proceed without suing and serving process on all claimants to the disputed office.[9] "The property itself is in such actions the defendant."[10] The Court's jurisdiction is based on its power over the *res*.[11] Unlike *in personam* actions, service of process in an *in rem* action does not create personal jurisdiction.[12] Rather, service gives

---

[7] *See Feeley v. NHAOCG, LLC*, 2012 WL 966944, at *5 (Del. Ch. Mar. 20, 2012); *Cedar Lane Farms, Inc. v. Taylor*, 1992 WL 111210, at *3 (Del. Ch. May 18, 1992).

[7] D.I. 72 at 11–12.

[8] D.I. 71.

[9] *Feeley*, 2012 WL 966944, at *5; *Haft v. Dart Grp. Corp.*, 1996 WL 255899, at *2 (Del. Ch. Apr. 26, 1996) (addressing the corporate analogue).

[10] *Cedar Lane Farms, Inc.*, at *3 (quoting *Freeman v. Alderson*, 199 U.S. 185, 187 (1886)); *e.g.*, 6 *Del. C.* § 18-110(a) (requiring the entity with the disputed office be named as a party).

[11] *McMillan v. Nelson*, 2024 WL 3311812, at *5 (Del. Ch. July 5, 2024) ("Under this statute, the office is the *res*, and the court has power to adjudicate title to the *res*.").

[12] *Feeley*, 2012 WL 966944, at *5 ("The defendants in [] a [Section 18-110] appear before the Court not individually, but rather, as respondents being invited to litigate their claims to the *res* (here, the disputed corporate office) or forever be barred from doing so." (internal quotations omitted)); *Haft,* 1996 WL 255899, at *2 (explaining a Section 18-110 judgment "affects the corporation and the *office* of director and is in the nature of an *in rem* proceeding . . . it is not therefore necessary that any or all claimants to the office be subject to the *in personam* jurisdiction of the court in order for the court to make an authoritative adjudication of that question,  [] under the full faith and credit clause, the courts of sister states would be bound to respect.").

notice and opportunity to be heard to those who might lose their property.[13]  When a party with a potential claim to the *res* does not receive adequate notice, that party is not bound to the results of the litigation.[14]  The Court must be satisfied all such parties have received notice before it can rule.[15]

Based on the record before me, MStar, who Defendants offer as a HoldCo co-manager, did not receive any notice of this dispute as to whether HREF is HoldCo's sole manager.  That leaves the parties at a crossroads, and leaves me with a nearly completed post-trial opinion that I cannot issue.  So that all can proceed as efficiently as possible, I will do the parties the courtesy of sharing what my draft opinion currently holds, using terms I know the parties understand.

---

[13] *Cedar Lane Farms, Inc.*, 1992 WL 111210, at *3 (explaining for *in rem* actions "persons with potential claims to the [office] in question need not be made parties, [but] due process requires that they receive adequate notice and an opportunity to be heard" and the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *e.g.*, *Feeley*, 2012 WL 966944, at *5; *Haft*, 1996 WL 255899, at *2 (addressing the corporate analogue).

[14] *Cedar Lane Farms, Inc.*, 1992 WL 111210, at *3 ("[No]tice to Cedar Lane by publication alone was constitutionally inadequate and does not bind Cedar Lane to the results of the prior litigation."); *Feeley*, 2012 WL 966944, at *5 (explaining a claimant to the corporate office in question must receive "actual notice" of the dispute before "the adjudication is binding").

[15] *Cedar Lane Farms, Inc.*, 1992 WL 111210, at *4.

It holds that HREF is HoldCo's sole manager. Section 18-402 of the Delaware Limited Liability Company Act (the "LLC Act") mandates that management "shall be vested in the manager who shall be chosen in the manner provided in the limited liability company agreement."[16] The HREF Addendum to HoldCo's operating agreement provides, "Upon the occurrence of an ARE . . . [HREF] shall without the consent of the Sponsor Members immediately become the sole manager of the Company with full control over all aspects of the Company . . . ."[17] That right was undisputedly triggered.[18] That is the end of the story.[19]

Defendants try to avoid this straightforward conclusion by trying to require preapproval from the U.S. Department of Housing and Urban Development ("HUD") and OpCo's lender before HREF can become HoldCo's manager. But no

---

[16] 6 *Del. C.* § 18-402.

[17] JX 13 at §§ 3(ii)–3(ii)(b). The "HREF Addendum," JX 13, is the controlling addendum to HoldCo's limited liability company agreement, JX 6. *See* JX 6 at § 5.1 ("The Members and [HREF] . . . intend to execute an Addendum to this Agreement (the "[HREF] Addendum") . . . pursuant to which [HREF] shall become a Member and agree to be bound by the terms of this Agreement. After execution of the [HREF] Addendum, the terms of the [HREF] Addendum shall control over any conflicting terms or inconsistencies with this Agreement."); *see also* JX 13 at § 1 ("Notwithstanding any provision in the [HoldCo] Agreement to the contrary, in the event of any conflict and/or inconsistency between the terms of the [HoldCo] Agreement and this [HREF] Addendum, the terms of this [HREF] Addendum shall in all respects control and supersede the terms of the [HoldCo] Agreement.").

[18] JX 13 at §§ 3(ii)-3(ii)(b); D.I. 77 [hereinafter "Joint Stip."] ¶ 37; JX 49 [hereinafter "Carroll Dep."] 73–76; D.I. 79 [hereinafter "Trial Tr."] 22–24, 137.

iteration of the HoldCo Agreement requires HUD approval, as it must to condition the vesting of HoldCo management under Section 18-402.

Defendants' only argument rooted in the HoldCo Agreement cites its purpose clause. HoldCo's stated purpose is to manage OpCo "in accordance with the [OpCo] Agreement."[20] Defendants look through the HoldCo Agreement's purpose clause to the OpCo Agreement's requirement that OpCo comply with its HUD loan documents,[21] and conclude HoldCo must comply with OpCo's contractual requirement to obtain HUD's prior approval for management changes at the HoldCo level.[22] The HoldCo purpose clause does not work that way. The

---

[19] The "HoldCo Agreement" is JX 6, and the "OpCo Agreement" is JX 5.

[20] JX 6 at Art. 4 ("The purpose of the Company is to be the manager of [OpCo] and cause [OpCo] to be operated in accordance with the [OpCo] LLC Agreement, including the Business Plan and Operator Budget. The purpose of the Company shall be limited to the foregoing and such other activities incidental thereto and shall not be extended by implication or otherwise unless expressly agreed to in writing by all the Members.").

[21] JX 5 at Art. 4 ("The purpose of the Company is to acquire certain real property in Conroe, Texas . . . in accordance with the Business Plan."); *id.* at §§ 14.6–14.6(h) ("The business and purpose of the Company shall consist solely of (a) acquiring, owning, operating and maintaining the Project, (b) executing, delivering and performing its obligations under the HUD Loan Documents, and (c) any lawful activities permitted under the law of the state in which the Company is organized that are incidental to the foregoing or necessary or convenient to accomplish the foregoing. the Company shall not engage in any other business or activity.").

[22] JX 4 at 185; JX 9 at §§ 34–34(i) ("Borrower shall not without the prior written approval of HUD, including without limitation in accordance with Program Obligations . . . Amend the organizational documents of Borrower in such a way that modifies the terms of the organizational documents required by HUD, Lender, and/or Program

purpose clause circumscribes HoldCo's authority to act.[23]  The purpose clause does not override other provisions explaining how a HoldCo manager is chosen, like the one in the HREF Addendum.[24]

Then Defendants look to the HUD and lender approval requirements in the MStar Amendment to the HoldCo operating agreement,[25] which was not effective because HREF did not sign it.[26]  Defendants argue HREF ratified the MStar

---

Obligations . . . ."); *id.* at §§ 38, 46(b), Ex. A; JX 10 at § 11; JX 19 at ¶¶ 2–2(c); JX 22 at ¶¶ 3–3(c).

[23] *Malt Fam. Tr. v. 777 P'rs LLC*, 2023 WL 7476966, at *8 (Del. Ch. Nov. 13, 2023) (explaining purpose clauses "deprive the entity of authority to validly engage in activities beyond those limits.  A limited purpose clause restricts the company, not its members." (citation omitted)); *Symbiont.io, Inc. v. Ipreo Hldgs., LLC*, 2021 WL 3575709, at *43 (Del. Ch. Aug. 31, 2021) ("A purpose clause that places limits on what an entity can do deprives the entity of the authority to engage in activities that otherwise would be permissible under default principles of law."); *see also* Robert L. Symonds, Jr. & Matthew J. O'Toole, Delaware Limited Liability Companies § 2.07[A], at 2-22 (2nd ed. 2025).

[24] *Malt Fam. Tr.*, 2023 WL 7476966, at *8; *see* 6 *Del. C.* § 18-1101(b) ("It is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements."); *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1150 (Del. Ch. 2006) (explaining a limited liability company agreement "creates the governance system for the LLC and establishes the framework governing *all* of the members' rights and duties towards one another"); *Huatuco v. Satellite Healthcare*, 2013 WL 6460898, at *1 (Del. Ch. Dec. 9, 2013) (explaining the Delaware limited liability act "provides default provisions applicable to Delaware LLCs where the parties' agreement is silent; where they have provided otherwise, with limited exceptions, such agreements will be honored by a reviewing court."), *aff'd,* 93 A.3d 654 (Del. 2014).

[25] The "MStar Amendment" is JX 20.

[26] JX 6 at § 20.12 ("Any amendments to this Agreement or the Certificate of Formation shall be in writing and shall be approved by all the Members.").

Amendment through the First Amendment to the HoldCo Agreement.[27] The MStar

Amendment was an act by a subset of HoldCo members, not HoldCo itself.[28] So it

was not ratifiable.[29] And HREF did not ratify the MStar Amendment.[30]

---

[27] JX 29 Recital ¶ A (The Company LLC Agreement was further amended by that certain First Amendment to Limited Liability Company Agreement dated February 14, 2022 (the "[MSTAR Amendment]") pursuant to which MStar became a manager and member of WMPH"); ¶¶ 3–3(c) representing (b) other than HREF, WMPH, MStar, and SLI are sole members of the Company; [and] (c) the [WMPH and MStar] are the managers of the [HoldCo], and the [HoldCo] is the sole manager of [OpCo]"); ¶ 6(c) ("Except as specifically modified pursuant to the terms hereof, the HoldCo Agreement and the [HREF] Addendum (and all covenants, terms, conditions and agreements therein) shall remain in full force and effect, and are hereby ratified and confirmed in all respects by [HoldCo, WMPH, MStar, and SL1]."); *see also id.* at ¶ 8(c) ("The recitals set forth at the beginning of this Amendment and the schedules attached hereto are incorporated by reference.").

[28] JX 20 at 3–5; JX 6 § 20.12; *see Zohar III Ltd. v. Stila Styles, LLC*, 2022 WL 1744003, at *15 (Del. Ch. May 31, 2022) (holding an amendment to an LLC operating agreement purportedly adopted by a manager was an act by the manager, not the company).

[29] A Delaware LLC's authority to ratify "is limited to ratification of the LLC's own breaching acts. It does not apply to acts of LLC members." *Holifield v. XRI Inv. Hldg. LLC*, 304 A.3d 896, 927 (Del. 2023) (citing *Absalom Absalom Tr. v. Saint Gervais LLC*, 2019 WL 2655787, at *2 (Del. Ch. June 27, 2019)).

[30] *Genger v. TR Invs., LLC*, 26 A.3d 180, 195 (Del. 2011) ("Ratification may be either express or implied through a party's conduct, but it is always a 'voluntary and positive act.") (quoting *Frank v. Wilson & Co.*, 32 A.2d 277, 283 (Del. 1943)); *George v. Frank A. Robino, Inc.*, 334 A.2d 223, 224 (Del. 1975) ("Intention forms the foundation of the doctrine of waiver and it must clearly appear from the evidence."); *Frank,* 32 A.2d at 283 (explaining "[k]nowledge, actual or imputed, of all material facts is an essential" element of ratification).

Defendants offered no evidence HREF had knowledge of all material facts of the MStar Amendment when executing a later amendment mentioning it.[31]

Relatedly, Defendants claim MStar's purported status as a HoldCo co-manager under the MStar Amendment precludes HREF from stepping in as "sole manager" under the HREF Addendum. Not so. HREF secured the right to be HoldCo's "sole manager," regardless of how many managers it displaced.[32]

From there, Defendants look beyond the HoldCo Agreement. They look to preapproval requirements in OpCo's loan documents with HUD.[33] But under Section 18-402, only the HoldCo operating agreement can identify the manner of choosing a manager, and management shall be vested in that manager.[34] The HoldCo Agreement as modified by the HREF Addendum specifies HREF's step-in

---

[31] JX 49 at 197 ("I believe this is the first time I've seen this document . . . we clearly were not consulted on it."); D.I. 66 at 10–13; *see* JX 29.

[32] JX 13 at §§ 3(ii)–3(ii)(b).

[33] JX 8; JX 9; JX 10.

[34] 6 *Del. C.* § 18-402 ("[I]f a limited liability company agreement provides for the management . . . by a manager, the management of the limited liability company, to the extent so provided, shall be vested in the manager who shall be chosen in the manner provided in the limited liability company agreement.").

rights, unconditioned by any HUD preapproval.[35]  Neither HREF nor HoldCo is a party to the loan documents, so neither is bound by their terms or obligations.[36]

Relatedly, Defendants assert HREF's Section 18-110 claim is governed by the forum selection clause in OpCo's note with HUD, and the contracts between OpCo and HUD require "HUD, Greystone [Funding Company, LLC], MStar as a purported co-manager, MStar's principal Robert A. Sweet, and the Project's property manager, Meridian [Senior Living, LLC]" be joined as necessary parties to this action.[37]  Count V is not a controversy under OpCo's note with HUD; it is a controversy under HoldCo's operating agreement, and a statutory claim under the LLC Act.[38]  Venue here is proper.  And while MStar is constitutionally required to

---

[35] JX 13 §§ 3(ii)–3(ii)(b), 5(iii).

[36] *Am. Legacy Found. v. Lorillard Tobacco Co.,* 831 A.2d 335, 343 (Del. Ch. 2003) ("[A] fundamental principal of contract law provides that only parties to a contract are bound by that contract." (internal citation omitted)); *EEOC v. Waffle House, Inc.,* 534 U.S. 279, (2002) ("It goes without saying that a contract cannot bind a nonparty.");.*see Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59 (Del. Ch. 2012) ("[B]asic contract principles [recognize] that a person not a party to [a] contract cannot be held liable to it."); *see, e.g.*, *Wallace v. Wood,* 752 A.2d 1175, 1180 (Del. Ch. 1999).

[37] D.I. 74 at 3, 20; D.I. 75 at 11–14.

[38] AC ¶¶ 52–61, 150–157; *Soleimani v. Hakkak*, 2024 WL 1593923, at *5 (Del. Ch. Apr. 12, 2024), (explaining a Section 18-110 claim "turns on the interpretation of contracts governing the parties' relationship"), *aff'd,* 327 A.3d 1060 (Del. 2024); *Walker v. Res. Dev. Co., L.L.C. (DE),* 791 A.2d 799, 813 (Del. Ch. 2000) ("LLC members' rights begin and typically end with the Operating Agreement."); *In re NextMedia Invs., LLC*, 2009 WL 1228665, at *7 (Del. Ch. May 6, 2009) ("[T]he purpose of an LLC agreement, like all agreements, is to define the rules of the game so that all parties know what to expect."); 6 *Del. C*. §§ 101(9), 101(12).

receive notice of this action, only HoldCo must be named a party to adjudicate HREF's Section 18-110 claim.[39]

Finally, swinging for the fences, Defendants look to HUD rules and regulations to argue HREF's step-in rights are illegal and unenforceable. Defendants claim the HREF Addendum is illegal and unenforceable because it required OpCo to make distributions to pay HREF's monthly return that violated HUD regulations on when distributions could be made.[40] But the HREF Addendum did not require OpCo to make distributions to pay HREF. HREF funded the first twenty-five months of its return, to be placed in a lockbox account in HoldCo's name.[41] Then, OpCo was to fund HoldCo's obligations to HREF.[42]

---

[39] *Haft,* 1996 WL 255899, at *2; *McMillan*, 2024 WL 3311812, at *5.

[40] D.I. 75 at 22 (citing 24 CFR § 232.254); JX 9 at § 16.

[41] JX 13 at § 4(iii); JX 13 at 32; JX 11 at 1; *see also* JX 2 at 6 (explaining HREF's funds "shall be deposited into an account that can only be used for the designated purpose and be drawn with the consent of [HREF].") That the account was incorrectly opened in OpCo's name does not mean the contract calls for illegal OpCo payments. *Compare* JX 13 at 32–34 *with* JX 61 at 1; *see* JX 24; JX 58 at 1 (Lindsey explaining HREF's investment "was not a loan to the top entity and never was, it was an obligation of the lower tier entity WMCPH LLC."); *id.* at 4 ("The most recent financials and 2023 audit have been substantially delayed due to a restatement of the previously issued 2022 audit. It was discovered, recently, that the contribution by [HREF] was booked on [OpCo]'s Balance sheet as a Note Payable []. This was never the case, and the auditors have been working to correct [OpCo]'s Balance sheet as well as [HoldCo]'s Balance sheet."); *see also* JX 23 at 4.

[42] JX 5 at § 9.1 ("From time-to-time and before any distribution of Net Cash Flow . . . [OpCo] shall make payments to, or on behalf of, [HoldCo] sufficient to allow [HoldCo] to timely make required payments to [HREF] pursuant to the terms of the [HoldCo]

But OpCo was not required to make those payments: it could default and leave HoldCo to face the consequences from HREF, including the exercise of its step-in rights.[43] The HREF Addendum did not require illegal payments.

Defendants also contend HREF Addendum in its entirety is illegal because HREF's right to step in as HoldCo's manager effectively eliminated HUD's approval right under OpCo's loan documents. HREF's exercise of the step-in rights it contractually secured from HoldCo might cause OpCo to breach its contract with HUD. But Defendants have not shown that secondary breach violates any statute or law.[44]

---

Agreement, including monthly payments of the [HREF] Current Return[.]"). Defendants contend this language required OpCo to make "distributions" to fund HREF payments even when OpCo should not have made distributions under 24 C.F.R. § 232.254. It does not. Section 9.1 simply provides that OpCo would pay HREF before making any other distributions.

[43] *Bennett v. Lally*, 2014 WL 4674623, at *4 (Del. Ch. Sept. 5, 2014) ("[C]ourts are averse to voiding agreements on public policy grounds unless their illegality is clear and certain," and Delaware courts exercise "this authority with caution, and only in cases that are free from doubt"); *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*, 2023 WL 4857281, at *9 (Del. Ch. July 31, 2023) (holding a contract was not illegal because the plaintiff "can perform [it] . . . without violating securities laws"), a*ff'd sub nom. Mobile Invs., LLC v. Tygon Peak Cap. Mgmt., LLC*, 315 A.3d 445 (Del. 2024); *see also* 17A C.J.S. Contracts § 271 ("If the contract itself discloses no illegality and may be performed in a legal manner, it is not rendered unenforceable by the fact that it may also be performed in an illegal manner or because illegal acts are committed in carrying it out."); D.I. 72 at 17–19.

[44] *See Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674, 689 (Del. 2024) ("When parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong

A final note. HREF has invoked the HREF Addendum's "best efforts" clause in requesting an order "that any present managers [of HoldCo] comply with their obligation to enable the transition to HREF as manager of [HoldCo] . . . ."[45] This request exceeds the scope of the Court's ancillary authority under Section 18-110, and risks offending the *in rem* character of this statutory proceeding.[46] And

---

showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract. Such public policy interests are not to be lightly found, as the wealth-creating and peace-inducing effects of civil contracts are undercut if citizens cannot rely on the law to enforce their voluntarily-undertaken mutual obligations.").

[45] D.I. 66 at 8; *see* JX 13 at § 3(ii)(a) ("[T]he Project Managers shall use best efforts to modify applicable HUD forms and any other relevant forms, and shall otherwise use best efforts to take all other steps necessary, to provide that [HREF] or its designee shall be a key principal thereunder and to cause [HREF] or its designee to replace the Project Managers as sole manager of [HoldCo] with all decision making authority [HoldCo] as the manager of [OpCo].").

[46] *Lynch v. Gonzalez Gonzalez*, 2020 WL 3422399, at \*5 (Del. Ch. June 22, 2020) ("A Section 18-110 proceeding is designed to focus with precision on the corporate interest in prompt resolution of grievances respecting claims to office." (internal quotations omitted)); *Zohar III Ltd.*, 2022 WL 1744003, at \*10 ("[T]he test for determining whether a claim can properly be decided under § 18-110 is whether it is necessary to decide [the claim] in order to determine the validity of the election or designation by which the defendant claims to hold office." (internal quotations omitted)); *Genger*, 26 A.3d at 199 ("The *in rem* character of a Section [18-110] action 'imposes important limits on the scope of [a] court's remedial powers even as to claims bearing on whether a person lawfully holds corporate office.'" (quoting *Agranoff v. Miller,* 1999 WL 219650, at \*18 (Del. Ch. Apr. 12, 1999)))).

an even more foundational principle precludes an order at this time requiring Defendants to comply with the best efforts provision: lack of ripeness.[47]

None of Defendants' arguments impede the operation of the HREF Addendum's specific provisions making HREF HoldCo's sole manager upon the occurrence of an ARE.[48]

The matter is back in your hands.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*

---

[47] *Cardinale v. Feingold*, 2023 WL 142510, at *2 (Del. Ch. Jan. 10, 2023) ("There must be an actual controversy present for the court to exercise declaratory judgment jurisdiction."); *All. Compressors LLC v. Lennox Indus. Inc.,* 2020 WL 57897, at *5 (Del. Ch. Jan. 6, 2020) ("Any future breach following a court's ruling would be hypothetical, such that instructing [Defendants] to go, and breach no more would be entirely unnecessary and thus inappropriate."); *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376, at *8 (Del. Ch. July 31, 2019) ("[I]f the mere threat of future breach or disregard of court orders triggered equitable jurisdiction, such jurisdiction would be general, not limited," and Court guidance in such a situation would be too attenuated from an existing dispute to satisfy the ripeness doctrine.).

[48] JX 13 §§ 3(ii), 3(ii)(b).