NICHOLAS PAPAIOANU,
Plaintiff,

*vs.*

THE COMMISSIONERS OF REHOBOTH, a Delaware
Municipal corporation,
Defendant.

*Sussex County, December 18, 1962.*

*Houston Wilson,* Georgetown, for plaintiff.

*Paul R. Reed,* Georgetown, for defendant.

SHORT, Vice Chancellor: Plaintiff seeks specific performance of an option to renew concessionaire's licenses to beach sections 1 and 3 of the City of Rehoboth granted pursuant to the provisions of Ordinance 101 of that city. This is the decision after final hearing.

Ordinance 101 of the City of Rehoboth provides rules and regulations "for fees to be paid by persons, firms and corporations engaged

within the City in furnishing or servicing beach equipment." Section two of the ordinance provides that The Commissioners of Rehoboth shall advertise and receive sealed bids from persons desiring to engage in the business of furnishing for hire beach umbrellas, chairs, back rests and other similar equipment. Section 4a provides that each bid shall be accompanied by a performance bond "in an amount equal to the total amount of the bid submitted by any such bidder." Section 4b provides that each bid must be accompanied by a check in the amount of ten per cent of the bid price, the balance thereof to be paid by the successful bidder on or before May 29 following the award of the license. Section 6 provides: "The issuance of a license as herein provided shall carry with it the right in the licensee to extend such license for a term of two additional years upon notice in writing delivered by registered mail to The Commissioners of Rehoboth to that effect not later than September 10 of the year for which said license is issued. The exercise of said option shall be valid upon delivery by the licensee to The Commissioners of Rehoboth of a performance bond similar in all respects to that furnished by him upon the granting of the original license except that it shall run for a two-year period. The licensee shall further be obligated upon the exercise of his option to renew to deliver to The Commissioners of Rehoboth a cashier or certified check in the amount of ten per cent (10%) of the license fee for each of the two years covered by said option."

On February 10, 1961, at the regular meeting of The Commissioners of Rehoboth, sealed bids for the 1961 beach concession licenses were opened. Plaintiff submitted two bids. For section 1 he bid $4,100, and for section 3 he bid $5,200.[1] The bids submitted by plaintiff were the highest bids for the respective sections covered thereby and the commissioners accordingly awarded the concessions for these beaches to plaintiff. On June 2, 1961, plaintiff having complied with the provisions of Ordinance 101, licenses were granted to plaintiff to engage in beach service on section 1 and section 3. He

1. Section 1 comprised that part of the beach lying between the northern limits of the city on the north and the jetty northeast of the Henlopen Hotel on the south. Section 3 comprised that part of the beach from the northern side of South Lake Avenue extended on the north to the center of Rehoboth Avenue extended on the south.

then proceeded to furnish and service beach equipment on these beaches during the summer of 1961. In order to operate the concession on Beach No. 1 plaintiff expended in excess of $5,000.00 for equipment and stands.

On September 8, 1961, plaintiff gave written notice to The Commissioners of Rehoboth of his intention to renew the licenses for both beach concessions for an additional two-year period. He accompanied this notice with his check in the amount of $1,860, being ten per cent of the license fee for the two years covered by the option. On the same day, plaintiff delivered a letter from his bonding agent directed to The Commissioners of Rehoboth, assuring the commissioners that the agent would provide a performance bond to cover plaintiff's beach concessions for a one-year period.[2] Upon discovering that the assurance of the bonding agent was for a one-year period only, plaintiff, on September 10, 1961, presented to the City Manager a certified check in the amount of $9,300 to cover the license fee for the second option year. On September 9, 1961, the secretary of The Commissioners of Rehoboth mailed written notice to plaintiff to appear before the commissioners on September 15, 1961 to show cause why his license for section 1 should not be revoked for cause. On September 11, 1961, the secretary notified the commissioners of the special meeting called for September 15, the purpose of which meeting was stated to be to hear plaintiff "show cause, if any he may have, why the license for furnishing of beach services on section 1 of the beach should not be revoked." Plaintiff appeared at the September 15 meeting with his counsel. According to the minutes of that meeting the only business then undertaken was a consideration of plaintiff's compliance with Ordinance 101 with respect to the exercise of his options. Three of the five commissioners present approved a motion that plaintiffs "request for renewal of his option be denied because he has not complied with the terms of section 6 of Ordinance No. 101." Two of the commissioners abstained. The minutes of the meeting

2. In awarding the concessions of beaches numbers 1 and 3 to plaintiff on February 10, 1961, the commissioners, in accordance with previous instructions given to prospective bidders, accepted written assurance from the bonding agent that appropriate bonds would be promptly forthcoming.

reflect that following the approval of the motion plaintiff "was reminded that action tonight did not prevent him from making a bid in January." The minutes further disclose that the President of the commissioners proposed to turn the problem of proper maintenance of the beaches "over to the Planning Committee, to meet and work with concessionaires," and make recommendations to the commissioners. This action was approved by the commissioners. Appropriate action also authorized the City Manager to return to plaintiff the two checks which he had delivered to the commissioners to validate exercise of the renewal option. Following the denial by the commissioners of plaintiff's right to exercise his option, plaintiff, according to his testimony, attempted to protest but was prevented from doing so by the President of the commissioners.

On September 21, 1961, plaintiff went to the City Hall in Rehoboth and there received from the City Manager and receipted for the two checks which the commissioners had authorized to be returned to him. There is a dispute as to the circumstances under which the return of the checks was made. Plaintiff testified that he went to the City Hall on other business and that the City Manager saw him there and arranged for the return. The City Manager, on the other hand, testified that plaintiff came into his private office and asked for the checks. In any event, plaintiff made no claim to any rights under the options.

At some time between September 15 and September 27, 1961, a meeting of the Planning Commission was held. The several concessionaires were invited to, and did attend this meeting. These concessionaires, including plaintiff, made certain recommendations with respect to revisions of the city ordinance "to insure cleaner and better beaches." Again, plaintiff did not assert any rights. Thereafter, on October 20, 1961, the Planning Commission reported its recommendations to the commissioners. Some discussion was had by the commissioners which resulted in the calling of a special meeting to be held November 10, 1961. At the latter meeting, which plaintiff attended, considerable discussion took place with respect to the question as to whether a new ordinance could be adopted and put into operation in view of the fact that other concessionaires had effectively exercised

the option to renew the license to Beach No. 2. At this meeting the licensees of Beach No. 2 executed a release of their option. Plaintiff apparently took some part in the discussions at this meeting but made no claim of any rights. The commissioners again met in regular session on November 17, 1961 and there adopted a new Ordinance No. 101. Plaintiff was again in attendance and joined in at least some of the matters which were then discussed. He was asked if he had any objection to the action undertaken at the meeting. His only objection was to the limits of Beach No. 3 as defined by the new ordinance. Among its provisions the new ordinance required the City Manager to advertise for proposals "for at least two weeks prior to the third Thursday in December of any year in which bids are to be sought." There was discussion with respect to the advisability of extending this time as to advertising to be made in December, 1961.

Pursuant to the new ordinance the City Manager proceeded to advertise for bids for beach concessions, sealed bids therefore to be received by the commissioners at the regular meeting to be held February 23, 1962. On February 19, 1962, this action was commenced and at plaintiff's instance a restraining order was issued by the court enjoining the defendant from granting to any person other than plaintiff any concession or license to engage in "beach service" on sections 1 and 3 of the beach in the City of Rehoboth.

Plaintiff contends that the right and privilege accorded by his license was a contract right, and, as such, subject to protection from impairment by the granting authority. He contends that the right of renewal was an essential element of the contract, upon the faith of which plaintiff expended substantial sums for equipment and material. He challenges the legality of defendant's action in refusing and rejecting his exercise of the options to renew. Defendant does not dispute the contention that plaintiff's rights were contractual in nature. It maintains, however, that plaintiff failed to comply with the requirements of his licenses and the ordinance in attempting to exercise the options to renew. Defendant also contends that, in any event, plaintiff is estopped to assert the rights alleged by reason of his con-

duct on and subsequent to September 15, 1961. Laches and adequacy of the legal remedy are also asserted.

It is generally recognized that contracts of a municipal corporation which pertain to proprietary functions are to be construed and interpreted by the same rules which govern contracts of private individuals. 23 *Am.Jur.* 718. Defendant could not, therefore, lawfully refuse plaintiff the right to exercise his options. Neither could it reject an exercise of these rights which was in substantial conformity with the ordinance. 81 *C.J.S. Specific Performance* § 112, p. 643. Whether or not there was substantial compliance in the present instance need not be decided for I am satisfied that plaintiff, under the circumstances here appearing, has acquiesced in defendant's rejection of the renewal of his licenses and is estopped to assert any rights which he might have otherwise had by reason of the attempted exercise of the options to renew.

From the time of the special meeting of the commissioners held on September 15, 1961 until shortly before this action was filed in February, 1962, plaintiff at no time asserted any rights under the licenses granted him on June 2, 1961 or under his options to renew such licenses. While he attempted to make some statement at the September 15, 1961 meeting, presumably to protest the action of the commissioners, he apparently did not persist in the effort to make a statement. He thereafter accepted a return of his checks from the City Manager without claiming any rights. He attended meetings of the Planning Commission and the commissioners where there were lengthy discussions considering the advisability of adopting a new ordinance with regard to beach concessions. He participated in the discussions of these several meetings and made recommendations with respect to some matters which a new ordinance should provide. He attended and participated in a meeting at which there was lengthy discussion of the rights of another concessionaire who had effectively exercised an option to renew. He attended and participated in the meeting of the commissioners at which the new ordinance was adopted, and was apparently present when discussion was had as to advertising for proposals for the year 1962. During all of this period he at no time made any claim or statement to the rights which he

here asserts, and this, in spite of the fact that, according to the testimony, he was asked at every meeting which he attended whether or not he had any objections to the matters there under consideration. The only objection which he ever expressed was as to the division of the beaches.

But plaintiff says that the doctrine of estoppel is not here applicable for the reason that it does not appear that defendant relied and acted upon plaintiff's conduct to its prejudice. As I view it, the record of this case establishes a contrary conclusion. Not only did the commissioners devote substantial time and effort to the consideration of a new ordinance and expend some funds in advertising for proposals for the year 1962, but at the instance of the commissioners another concessionaire was persuaded to release any rights which it had following the exercise of its option to renew. Acceptance of this release might well be regarded as substantially altering the rights of the city, and, therefore, sufficient to demonstrate reliance to its prejudice. In this connection it is to be observed that counsel have made no point of the nature of the interest which plaintiff held under his so-called licenses. In considering the applicability of the defense of estoppel, I, too, have regarded the nature of plaintiff's interest as unimportant. However, I do observe that the rights and privileges granted to the plaintiff by the contract were more than a mere revocable license. In similar circumstances, it has been held that the interest of a so-called concessionaire is in the nature of an easement in gross. *Willoughby v. Lawrence*, 116 *Ill.* 11, 4 *N.E.* 356, 56 *Am. Rep.* 758; *Goldman v. Beach Front Realty Co.*, 83 *N.J.L.* 97, 83 *A.* 777. Assuming such an interest in plaintiff, the principle set forth in *Restatement, Property* § 505, p. 3088, is pertinent to the circumstances presented. It is:

> "A factor in determining whether an estoppel will be raised against the claim of the continued existence of an easement is the extent of the harm which would be caused to the owner of the servient tenement by the restoration of the privilege authorized by the easement. If, under all the circumstances, it would be unreasonable to restore the privilege, restoration will be denied. Whether it would be unreasonable or not depends upon

the extent of the harm, the justification for the reliance, and the extent to which the owner of the easement might have foreseen reliance upon his conduct. The influence of these various considerations will differ in different cases. The more easily the owner of the easement might have foreseen reliance upon his conduct, the less emphasis is placed upon the requirements of reliance and harm. The clearer the justification for the reliance, the less emphasis is placed upon the remaining factors."

Here the circumstances plainly show that plaintiff should have foreseen reliance upon his conduct. Justification for the reliance, and actual reliance is equally clear. In such circumstances the emphasis to be placed upon harm is minimized.

But assuming that the facts presented do not establish a true estoppel, there are equitable principles akin to estoppel which do not require a showing of change of position or prejudice. I refer to the doctrine of acquiescence and ratification which, in my view, is peculiarly applicable to the present facts.

In 2 *High on Injunctions (2nd Ed.)* 733, the author says:

"He who seeks the aid of equity to enjoin the violation of an agreement, or for the protection of his contract rights, must himself come into court with clean hands, and to entitle himself to relief he must have carried out, as far as possible, his own part of the contract. So, too, he must show that he has used reasonable diligence in asserting his rights and in demanding their protection, and unreasonable delay in seeking the aid of a court of equity, or acquiescence in the violation of the agreement in question, will generally prove a bar to the exercise of the jurisdiction."

In *Herman, Commentaries on the Law of Estoppel,* 1191, it is said:

"Acquiescence in a transaction may bar a party of his relief in a very short period. Thus, if one has knowledge of an act, or it is done with his full approbation, he can not afterwards have relief. He is estopped by his acquiescence, and can not undo that

which has been done. So, if a party stand by, and sees another dealing with property in a manner inconsistent with his rights, and makes no objection, he can not afterwards have relief."

At page 1194, the same writer says:

"When a man with full knowledge, or at least with sufficient notice or means of knowledge of his rights, and of all the material circumstances of the case, freely and advisedly does anything which amounts to the recognition of a transaction, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly and deliberately permits another to deal with property, or incur expense, under the belief that the transaction has been recognized, or freely and advisedly abstains for a considerable lapse of time from impeaching it, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity."

In *Frank v. Wilson & Co., Inc., 27 Del.Ch. 292, 32 A.2d 277,* Chief Justice *Layton* said:

"The defenses of laches, acquiescence, ratification and estoppel all have some element in common. Acquiescence and ratification are closely related. The terms are oftentimes loosely used. Acquiescence properly speaks of assent by words or conduct during the progress of a transaction, while ratification suggests an assent after the fact. Ratification, moreover implies a voluntary and positive act; but inaction alone may amount to a positive act. * * * Knowledge, actual or imputed, of all material facts is an essential; but ratification may be implied from conduct, as well as expressed by words. Conscious intent is not an element, nor does ratification require a change of position or prejudice. * * * Acquiescence may be evidence of ratification, or expressed otherwise, acquiescence may rest on the principle of ratification. * * * Where the conduct of a complainant, subsequent to the transaction objected to, is such as reasonably to warrant the conclusion that he has accepted or adopted it, his ratification is implied through his acquiescence. * * * When the late Chancellor observed in *Romer v. Porcelain Products, Inc.,*

*Del.Ch.* [52], *2A.2d* 75, 76, that a complaining stockholder was barred by 'the estoppel of his acquiescence' * * * it is equivalent to saying that by his conduct the complainant has ratified the matter in dispute."

The record in this case clearly demonstrates that all material facts were within the actual knowledge of plaintiff. He was in attendance at the meeting of the commissioners when his right to renew his licenses was rejected; he was in attendance at meetings of the Planning Commission and the commissioners when the feasibility of adopting and putting into operation a new ordinance was under discussion; he was present, and stood silently by when the problem created by the existence of an effective renewal of license by another concessionaire was under discussion; he was present when the new ordinance was adopted, and also aware that the commissioners intended to advertise for proposals for the year 1962. Plaintiff's conduct since the transaction objected to warrants the conclusion that he has accepted or adopted it. He is barred by "the estoppel of his acquiescence."

In view of the foregoing conclusion I find it unnecessary to consider the defense of laches, as such, though that defense, under the circumstances, is necessarily interwoven with acquiescence and ratification. Defendant's contention that plaintiff has an adequate remedy at law for damages is of doubtful application. There would appear to be uncertain elements which would enter into a determination of damages resulting from a breach of the contract by The Commissioners of Rehoboth. *Cleveland Concession Co. v. City of Cleveland,* 84 *Ohio App.* 193, 83 *N.E.2d* 818.

Under the circumstances presented, plaintiff is foreclosed from seeking specific performance. Judgment will be entered for the defendant.

Present order on notice.