**Albert H. MARTA, Plaintiff,**

v.

**The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.**

Civ. A. No. 94–429–JLL.

United States District Court, D. Delaware.

May 30, 1995.

Frederick W. Iobst, and Nancy E. Whinnery, of Young, Conaway, Stargatt & Taylor, Wilmington, DE, for plaintiff.

M. Duncan Grant, and Kathryn A. Kelly, of Pepper, Hamilton & Scheetz, Wilmington, DE, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. INTRODUCTION

This action arises over a dispute concerning an obligation to pay a species of interest called "contingent interest" which is grounded in a note ("Note") and mortgage ("Mortgage").[1] The plaintiff, Albert H. Marta ("Marta"), assumed the Note which was secured by the Mortgage on an apartment complex when he purchased the complex from the previous owner on August 7, 1972. (Docket Item ["D.I."] 1.) The other party to the Note and Mortgage is the Mutual Life Insurance Company of New York ("MONY").

On July 14, 1994, Marta filed a complaint for a declaratory judgment in the Superior Court for the State of Delaware. Marta sought a declaration that he did not owe MONY any contingent interest which MONY claims has accrued since he last paid it in April of 1977. (D.I. 35 at 7.) MONY removed the case to this Court on August 12, 1994, and also filed an answer as well as a counterclaim seeking payment of the unpaid

---

1. The parties refer to this as contingent interest in their briefs filed with the Court; however, the Note characterizes it as "additional interest." (D.I. 34, Ex. 1.)

contingent interest, attorneys' fees, and pre-judgment interest.

Presently before the Court are Marta's motion for partial summary judgment, (D.I. 29), and MONY's motion for summary judgment (D.I. 32). For the reasons stated below, the Court will deny plaintiff's motion for partial summary judgment and will grant Defendant's motion for summary judgment in part, and will require further briefing from the parties to resolve the remaining issues.

## II. FACTS

On August 7, 1972, Marta assumed the Note and Mortgage as part of the purchase of an apartment complex from a party not relevant to this dispute. Marta then named the complex Brookside Plaza Apartments ("Brookside"). (D.I. 1, ¶¶ 10–13.) The Note obligated the borrower to pay MONY principal, regular interest, and an amount the parties call contingent interest. The amount of contingent interest the borrower was obligated to pay was "[t]wenty percent (20%) of the annual gross revenue in excess of $100,000.00 derived from the property affected by the mortgage securing this note." (D.I. 1, Ex. A.) The property affected by the mortgage securing that Note is Brookside. (*Id.*, Ex. B.) The Mortgage required Marta to supply MONY with an operating statement within 90 days of the end of each fiscal year so that MONY could compute the amount of contingent interest due. (*Id.*, Ex. B, ¶ 21.) Additionally, the Note contains a provision which permits MONY to collect reasonable attorney's fees not exceeding 10% of the amount owing on the Note in the event MONY retains an attorney for collection. (*Id.*, Ex. A.)

In late 1972, soon after Marta assumed the obligations under the Note and Mortgage, MONY's servicing agent for the loan, Lomas & Nettleton Company ("Lomas"), corresponded with Marta on several occasions to remind him that he must pay contingent interest. The substance of Marta's response to those reminders, through the manager at Brookside, Edward Madanat ("Madanat"), was that the contingent interest obligation was too burdensome and that Lomas had calculated the amount due incorrectly. (D.I. 34, Ex. 6.)

At about the same time as that correspondence, when the first payment was due, Madanat recalls not paying the contingent interest because Marta expressed surprise that he owed contingent interest and as a result Marta told him not to pay it. (D.I. 34, Ex. 7 at 27.) Then in August of 1973, Marta and Madanat went to New York to meet with MONY representatives to discuss the problems Marta was having paying the loan because of the contingent interest obligation. Marta contends that he raised the issue of the contingent interest at the meeting. Specifically, he told the MONY representatives who attended the meeting that Tom Walsh ("Walsh"), a MONY employee who was not at the meeting, had promised Marta that MONY would waive the contingent interest if Marta paid the principal and regular interest for two years. (D.I. 26, Ex. 2 at 2; D.I. 34, Ex. 7 at 59–60.) Walsh allegedly made this promise on several occasions either during or after Marta's negotiations to purchase Brookside. (D.I. 36, Ex. 2 at 3–4.) After the meeting in New York, Madanat made some payments of contingent interest, even though Marta did not want him to. (D.I. 36, Ex. 3 at 68.) The last payment of contingent interest was made in April 1977. (D.I. 35 at 7.)

In the meantime, Marta and MONY negotiated a modification agreement ("Modification Agreement"). (D.I. 34, Ex. 16.) The Modification Agreement provided that MONY would (1) capitalize certain unpaid interest by adding it to the principal amount due under the loan, (2) forgo collecting certain overdue monthly principal payments until the maturity of the loan, (3) adjust the monthly installment payments for principal and interest, and (4) make some other related adjustments to the loan. (*Id.*) The Modification Agreement made no changes to the contingent interest provision. (*Id.*) Further, it specifically provided that "the Note and the Mortgage, except as modified herein are confirmed and ratified by Owner [Marta]." (*Id.*)

On March 13, 1978, Marta advised Tom Maher, another Lomas employee, by letter that he would no longer pay contingent interest. (D.I. 34, Ex. 18.) After receiving that letter, MONY tried to negotiate another loan

modification with Marta. Those negotiations were unsuccessful and MONY ceased trying to negotiate with Marta in October 1980. (D.I. 36, Exs. 4 & 9.) Later in 1980 and through 1985 the parties once again tried to negotiate another modification. Those negotiations also failed.

On July 19, 1985, Francis McCann ("McCann"), the Comptroller of Albert H. Marta Enterprises, wrote to Lomas regarding the contingent interest obligation and said he thought that further written correspondence in an attempt to resolve the contingent interest problems would be unhelpful. He accordingly requested a meeting with Lomas and MONY representatives to resolve the difficulty. (D.I. 36, Ex. 12 at B134.) In response, Timothy Young of Lomas requested that McCann provide Brookside financial statements for 1982–84 as a prerequisite to the meeting so that Lomas could calculate the contingent interest Marta owed. (*Id.,* Ex. 12 at B136.) McCann's reply of June 4, 1985, contained the following paragraphs:

> I doubt that I can make our position any clearer than by saying, the financial statements you are requesting for the years 1982, 1983, and 1984 are not going to be provided to the Lomas and Nettleton Company, or Mutual of New York, until and unless there is a meeting with a representative of MONY, who has the right to negotiate a change in this mortgage for that company.
>
> I reiterate the opinion that I expressed in my previous letter which is that, I feel that there is little to be gained by a continued exchange of correspondence. I feel that the only reasonable approach to solving the differences that apparently exist between the mortgagor and the mortgagee, is the face to face meeting that I have suggested. I hope that you will accept the initiative in this regard, and arrange such a meeting at everyone's earliest mutual convenience.

(*Id.,* Ex. 12 at B137.)

That meeting never took place. MONY made no more written demands for the contingent interest, although it did make further requests for annual operating statements. (D.I. 34, Ex. 24.) The last unequivocal request for these operating statements is dated June 6, 1988. (*Id.,* Ex. 24 at A230.)

From September 1985 to April 1995 (close to three months before Marta filed this lawsuit), MONY made no further demands for contingent interest, although there was correspondence between the parties relating to other matters throughout that period. (D.I. 35 at 11.)

## III. DISCUSSION

Marta first argues that he does not owe any contingent interest and thus that he does not owe any prejudgment interest. He also argues that even if he is liable for contingent interest MONY is not entitled to prejudgment interest on the unpaid contingent interest. Marta believes that MONY should have exercised one of its three remedies under the loan (foreclosure, default interest, or collection of rent) when Marta expressed to MONY in 1978 that he would not pay any contingent interest. (D.I. 30.) Therefore, by waiting, MONY is now estopped from demanding any prejudgment interest.

In its brief in support of its motion, MONY argues that it is entitled to summary judgment on Marta's request for a declaratory judgment because his claims are barred by Delaware's statute of frauds, the parol evidence rule, and because Marta's contradictory accounts of the alleged promise of Mr. Walsh do not evidence any agreement that is precise enough for this Court to enforce. In addition to arguing that Marta's defenses lack merit, MONY urges this Court to enforce the Note and Mortgage as written and award it the contingent interest, prejudgment interest, and its attorneys' fees. (D.I. 33.)

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The appropriate inquiry is whether there is a need for a trial. "In other words, [are] there any genuine factual

issues that properly can be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court must determine whether a reasonable jury could find for the nonmoving party on the issue in question. (*Id.* at 252, 106 S.Ct. at 2512.) Thus, where the nonmoving party fails to make a showing sufficient to establish an element of its case where that party will have the burden of proof at trial, then summary judgment against it is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, the Court views the facts in the light most favorable to the nonmoving party. *Hollinger v. Wagner Mining Equip. Co.,* 667 F.2d 402, 405 (3d Cir.1981).

At this point, the Court will only partially grant MONY's motion for summary judgment by declaring that Marta owes the contingent interest that he has not paid since 1977. The Court will not rule on the prejudgment interest issues at present as it will direct the parties to further brief the issues involved with that aspect. Finally, the Court will not award attorney's fees at this point, but will direct MONY's attorneys to file the appropriate affidavits justifying their expenses. *See Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

MONY first argues that the alleged oral modification of the written Note and Mortgage is barred by Delaware's statute of frauds. That section provides, in pertinent part:

> A contract, promise, undertaking, or commitment to loan money or to grant or extend credit, or any modification thereof, in an amount greater than $100,000, not primarily for personal, family, or household purposes, made by a person engaged in the business of lending or arranging for the lending of money or the extending of credit shall be invalid unless it or some note or memorandum thereof is in writing

and subscribed by the party to be charged or by the party's agent....

6 *Del.C.* § 2714(b).[2]

Marta counters that the Note and Mortgage constitute a contract for the sale of land, and that subsection (a) of § 2714 is the controlling statute of frauds. (D.I. 35 at 30.) That subsection provides: "No action shall be brought to charge any person upon any ... contract [for] sale of lands ... or any interest in or concerning them ... unless the contract is reduced to writing...." 6 *Del.C.* § 2714(a). He goes on to argue that three exceptions to the writing requirement apply in this case: (1) part performance, (2) accord and satisfaction, and (3) estoppel.

As the transaction between MONY and Marta concerned the loan of $700,000, and not the sale of the apartment complex from MONY to Marta, § 2714(b) is the controlling subsection. Applying that section, the transaction between MONY and Marta, including the alleged oral modification, must be in writing in order to be enforceable under Delaware law, absent the applicability of an exception which would allow this Court to enforce it even though there is no writing evidencing it.

 Under Delaware law, acts of part performance of an oral contract can sufficiently evidence the contract so that the statute of frauds is no bar to its enforcement. *Durand v. Snedeker,* 40 Del.Ch. 166, 177 A.2d 649, 650–51 (1962). Any acts which are alleged to constitute part performance must be such that the actor would have no other reason to perform them absent the contractual obligation. *Id.* at 653.

Here, Marta argues that he never paid any contingent interest, so he performed his obligation under the alleged oral modification. He further argues MONY finally began performing its obligation under the alleged oral modification when it stopped demanding contingent interest in 1985, after demanding contingent interest from 1972 until then.

---

2. MONY argues, and Marta does not contest, that Delaware's statute of frauds is applicable in this instance. Accordingly, the Court will apply that statute. Furthermore, as the parties do not contend otherwise, the Court will apply Delaware

law regarding the other claims involved in this opinion as that appears appropriate under Delaware's choice of law rules. *See Hionis Int'l Enters. v. Tandy Corp.,* 867 F.Supp. 268, 271 (D.Del.1994).

This argument is untenable for several reasons. First, the idea with the concept of part performance is that one or both parties begin performing their obligations under the oral contract, but that before all duties have been performed, the party asserting the statute of frauds defense ceases performance. But here, one of the parties, Marta, performed by not paying contingent interest while the other, MONY, was in breach by demanding the payment of contingent interest. That is, MONY was in breach because it violated its duty to Marta to not demand contingent interest. Then thirteen years into the contract, MONY began to perform by ceasing its demands. These facts are completely at odds with the cases Marta cites which recognize that part performance can take a contract out of the statute of frauds. In those cases, both sides begin performance under the oral contract and it is only when there is part performance by one of the sides (typically the defendant), and which ceases before full performance, that the Court finds the contract exists.

The second difficulty with Marta's position is that MONY's alleged acts of part performance—ceasing its demands for the contingent interest after thirteen years of demands—admit of an inference other than that MONY finally began performing in accordance with its obligation under the alleged oral modification. That is, MONY took Marta's agent, McCann, at his word that further written requests for contingent interest or for the operating statements which are necessary to compute the amount of contingent interest owed would be fruitless. Thus, Marta is not able to satisfy the requirement of *Durand* that the acts which allegedly constitute part performance are such that MONY would not have performed them absent a contractual obligation to do so. 177 A.2d at 653. Accordingly, his defense of part performance fails as a matter of law.

Marta's argument that an accord and satisfaction occurred and thus take this oral modification out of the statute of frauds is without merit and will not be discussed further.

Marta further contends, as defenses to MONY's motion for summary judgment, that MONY is (1) estopped from demanding the contingent interest, (2) that MONY acquiesced to Marta's conduct and is estopped on that ground as well from demanding contingent interest, (3) that MONY's claim is barred by laches, and (4) that MONY's conduct amounts to a waiver.

▉▉▉ Marta's estoppel and waiver arguments can be disposed of relatively easy. They are essentially three ways of saying that Marta did not know that MONY still claimed Marta owed it contingent interest. All three theories require a showing of reasonable reliance by the party claiming the estoppel or waiver. *Waggoner v. Laster,* 581 A.2d 1127, 1136 (Del.1990) (equitable estoppel); *Papaioanu v. Commissioners of Rehoboth,* 40 Del.Ch. 557, 186 A.2d 745, 750 (1962) (acquiescence); *Den–Tal–Ez, Inc. v. Siemens Capital Corp.,* 389 Pa.Super. 219, 566 A.2d 1214, 1233 (1989) (waiver); *Kiernan v. Dutchess County. Mutual Ins. Co.,* 150 N.Y. 190, 44 N.E. 698, 699 (1896) (same). However, both the Note and Mortgage contain no-waiver provisions which provide that a failure to exercise any of the rights created by the Note and Mortgage shall not constitute a waiver of those rights. (D.I. 34, Exs. 1 & 2.) Furthermore, the 1976 Modification Agreement left the no-waiver provisions intact. (*Id.,* Ex. 16.) Accordingly, this Court holds as a matter of law that Marta could not have reasonably relied on MONY's failure to exercise any of its rights as a basis for believing MONY was surrendering its written contract right to contingent interest.

▉▉▉ Marta's laches argument is likewise disposed of easily. In order for Marta to prevail on his laches defense he must demonstrate (1) MONY had knowledge of its claim, (2) MONY unreasonably delayed in asserting its rights, and (3) that there was an "intervening change in conditions prejudicial to [Marta]." *Skouras v. Admiralty Enters., Inc.* 386 A.2d 674, 682 (Del.Ch.1978). Marta cannot meet the third requirement because he has offered no proof of any *intervening* change in conditions. He simply proceeded from 1985 until present as he had from 1977 up until that point: he did not pay any contingent interest as he was obliged to do under the written Note and Mortgage. In other words, nothing external intervened.

Marta's refusal to pay contingent interest was his decision to make. His agent's communication to MONY that he would not abide by his agreement is also an action for which he is responsible. Thus, any prejudice to Marta was self-inflicted and not due to an external, intervening cause.

As the statute of frauds bars enforcement of the alleged oral modification of the Note and Mortgage, this Court finds it unnecessary to address MONY's alternative theories, the parol evidence rule and that the oral promise lacked sufficiently precise terms to make the alleged agreement enforceable.

## IV. CONCLUSION

For the foregoing reasons, the Court will enter an order granting MONY's motion for summary judgment in part by declaring Marta owes MONY the contingent interest. The parties will be further directed to brief the issues involving prejudgment interest with which the Court expressed concern at the conference held in chambers on May 23, 1995. Finally, MONY's attorneys must submit the appropriate affidavits justifying an amount sought as reasonable attorneys' fees.